# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
  Plaintiff,

v.               Case No. 14-CR-20

**EUGENE SWEENEY**
  Defendant.

## DECISION AND ORDER

  The government charged defendant Eugene Sweeney with Hobbs Act robbery, 18 U.S.C. § 1951, using a firearm during a crime of violence, 18 U.S.C. § 924(c), and possessing a firearm as a felon, 18 U.S.C. § 922(g). Defendant moved to suppress evidence seized from his residence, car, and person. The magistrate judge handling pre-trial proceedings in this case held an evidentiary hearing, then issued a recommendation that the motion be denied in part and granted in part. Specifically, the magistrate judge found that defendant's co-habiting girlfriend consented to the search of their apartment and that defendant consented to the search of his car, but that the police trespassed when they searched the basement of the apartment building without a warrant. She accordingly recommended that the evidence seized from the basement – a pistol, magazine, and ammunition – be suppressed.[1]

  The government objects to the recommended suppression of evidence found in the basement. Defendant responds to the government's filing but does not object to those portions of the recommendation unfavorable to him. The district court reviews de novo those portions

---

[1] The magistrate judge further found that the police lawfully detained and then arrested defendant outside the building.

of a magistrate judge's recommendation to which specific objection is made. See 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); United States v. O'Neill, 27 F. Supp. 2d 1121, 1126 (E.D. Wis. 1998); see also Johnson v. Zema Systems Corp., 170 F.3d 734, 739 (7th Cir. 1999). I now adopt the magistrate judge's report to the extent it recommends denial of the motion and to the extent that it rejects the government's exigent circumstances argument regarding the basement search. I will schedule further proceedings regarding defendant's expectation of privacy/property interest in the basement.

## I. FACTS

The magistrate judge provided a detailed recitation of the testimony, to which neither side objects. I accordingly adopt the magistrate judge's statement of the facts for purposes of this decision and present an abbreviated version of events herein.

On the morning of December 23, 2013, Milwaukee police responded to the armed robbery of a tavern. The victim identified the robber as Eugene Sweeney, a former employee of the tavern. The victim further indicated that defendant took a total of about $825 in small bills (singles and fives) and quarters. The victim gave police the address the tavern had for defendant, which the police were able to confirm by running a search showing that defendant was on probation with that same address.

Shortly after noon that day the police traveled to defendant's address, a multi-unit apartment building,[2] to locate defendant and talk to him. Two officers entered the building through the front door, which was propped open while someone moved, while a third covered the back door in case defendant fled. The officers knocked on the door to defendant's

---

[2]One of the officers testified that the building contained six to eight units.

apartment, which was eventually answered by defendant's girlfriend, who admitted the officers and consented to a search of the apartment, pursuant to which officers found currency – $123 in singles, $200+ in fives, and $5+ in quarters. Meanwhile, the officer stationed at the back detained defendant as he exited the building. Defendant gave consent to search his car, in which officers located clothing matching the robber's attire. Based on the victim's identification, the money found in the apartment, and the clothing in the car, the officers arrested defendant for the robbery. A search of defendant's person turned up more currency.

One of the officers went down the back stairs into the basement to "search the area." (Evid. Hr'g Tr. at 33.) The officer testified that at the bottom of the stairs he came to a walkway to go right or left. To the right, he saw a couple of open rooms; to the left, there were bigger rooms. The officer did not recall any doors or locks closing anything off, nor did he recall the rooms being designated as storage areas for any particular apartments in the building, but he only went into part of the basement. (Tr. at 27-28.) The officer testified that he turned left at the bottom of the stairs, then took another left along a wall running parallel to the stairs, which led to a little walkway underneath the stairs; at the corner of that wall, as you start going to the walkway, he found a black plastic bag containing a pistol, which matched the one used in the robbery, and ammunition. (Tr. at 29.)

## II. DISCUSSION

Before the magistrate judge, defendant challenged the purported consents to search his apartment and car, as well as his detention and arrest. The magistrate judge found the officers' testimony – that defendant and his girlfriend voluntarily consented – more credible. She further found that the police lawfully detained and patted defendant down as he left the building, and that they acquired probable cause to arrest him based on the victim's description

and the evidence they found in the apartment and car. Defendant does not object to these conclusions, which are well supported by the record and the authorities cited by the magistrate judge. I accordingly adopt those portions of the magistrate judge's recommendation and deny the motion to suppress evidence seized from defendant's apartment, car, and person. This leaves the evidence seized from the basement.

The government argues that the magistrate judge erred in recommending suppression of that evidence because (1) defendant lacked a legitimate expectation of privacy in the common basement, and (2) the search of the basement was justified by the exigency of needing to find the gun used in the robbery. The government abandons its claim, made before the magistrate judge, that the consent to search defendant's apartment also covered the basement.

**A.    Reasonable Expectation of Privacy**

The Fourth Amendment protects citizens against unreasonable searches and seizures of their persons, houses, papers, and effects. The Amendment reserves its strongest protection for the home and reflects a strong preference for search warrants. See, e.g., Payton v. New York, 445 U.S. 573 (1980).

Fourth Amendment rights are personal, however, and may not be asserted vicariously. E.g., United States v. Carlisle, 614 F.3d 750, 756 (7th Cir. 2010). Once referred to as "standing," this requirement is actually part of substantive Fourth Amendment law. See id. (citing Rakas v. Illinois, 439 U.S. 128, 143 (1978)). Until recently, courts used the "reasonable expectation of privacy" test enunciated in Katz v. United States, which required the defendant to establish, first, an actual (subjective) expectation of privacy in the area searched and, second, that the expectation is one that society is prepared to recognize as reasonable. 389

U.S. 347, 361 (1967) (Harlan, J., concurring); see, e.g., United States v. Mendoza, 438 F.3d 792, 795 (7th Cir. 2006); United States v. French, 291 F.3d 945, 951 (7th Cir. 2002); United States v. Evans, 27 F.3d 1219, 1228 (7th Cir. 1994). Under this test, even searches conducted within the "curtilage"of the home – that area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home, French, 291 F.3d at 951; United States v. Pace, 898 F.2d 1218, 1228 (7th Cir. 1990) – could be sustained if the defendant failed show the necessary expectation of privacy. See, e.g., United States v. Shanks, 97 F.3d 977, 979-80 (7th Cir. 1996); Evans, 27 F.3d at 1228-29. In applying this test, courts also generally concluded that tenants could not assert a reasonable expectation of privacy over shared or common areas in multi-unit buildings. E.g., United States v. Maestas, 639 F.3d 1032, 1038 (10th Cir. 2011) (collecting cases); see also United States v. Villegas, 495 F.3d 761, 768 (7th Cir. 2007); United States v. Concepcion, 942 F.2d 1170, 1172 (7th Cir. 1991). The theory was that, while a defendant may harbor a subjective expectation of privacy in such an area, the expectation could not be deemed reasonable when fellow tenants also had access and could admit others to the area. See United States v. Jefferson, No. 09-CR-18, 2010 WL 1186279, at *3 (E.D. Wis. Mar. 22, 2010) (citing United States v. Nettles, 175 F. Supp. 2d 1089, 1094 (N.D. Ill. 2001)).

As the magistrate judge recognized, however, the Supreme Court's decisions in United States v. Jones, 132 S. Ct. 945 (2012) and Florida v. Jardines, 133 S. Ct. 1409 (2013), permit a defendant to also challenge a search based on trespass under property law. See United States v. Schmidt, 700 F.3d 934, 937 (7th Cir. 2012) (assuming that, after Jones, police trespass into a shared backyard presumptively violated the Fourth Amendment, even if the defendant lacked a reasonable expectation of privacy there, and instead deciding the case

5

based on exigent circumstances); United States v. Perea-Ray, 680 F.3d 1179, 1186-87 (9th Cir. 2012) (holding that, under Jones, the defendant need not also show a reasonable expectation of privacy to establish a Fourth Amendment violation based on trespass onto carport within curtilage of his home).

In Jones, the police, acting without a valid warrant, installed a GPS device on the undercarriage of the defendant's vehicle, tracking his movements for nearly a month. 132 S. Ct. at 948. The district court denied Jones's motion to suppress, holding that he lacked a reasonable expectation of privacy in his public travel. Id. The Supreme Court found an unlawful search. The Court explained that, prior to Katz, its Fourth Amendment jurisprudence had been tied to common-law trespass. Id. at 949. In Katz, the Court deviated from that exclusively property-based approach, finding a Fourth Amendment violation based on the installation of an eavesdropping device in a public telephone booth. Id. (citing Katz, 389 U.S. at 351). However, the Jones Court stated that Katz did not repudiate the Fourth Amendment's concern with trespass on protected areas, id. at 950; instead, the Court noted, "the Katz reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test." Id. at 952; see also id. at 955 (Sotomayor, J., concurring) ("Katz's reasonable-expectation-of-privacy test augmented, but did not displace or diminish, the common-law trespassory test that preceded it."). And, when the police "physically occupied [Jones's] private property for the purpose of obtaining information," they engaged in a Fourth Amendment search. Id. at 949.

In Jardines, the police brought a drug sniffing dog to the defendant's front porch; after the dog alerted to narcotics, the police obtained and executed a search warrant, locating marijuana plants. 133 S. Ct. at 1413. Applying Jones, the Court found this a straightforward

case:

> The officers were gathering information in an area belonging to Jardines and immediately surrounding his house – in the curtilage of the house, which we have held enjoys protection as part of the home itself. And they gathered that information by physically entering and occupying the area to engage in conduct not explicitly or implicitly permitted by the homeowner.

Id. at 1414. In explaining its conclusion, the Court first noted that a front porch is the classic exemplar of curtilage, an area adjacent to the home and to which the activity of home life extends. Id. at 1415. Having found the area constitutionally protected, the Court turned to the question of whether the officers made "an unlicensed physical intrusion." Id. While a police officer need not shield his eyes when passing by a home on public thoroughfares, his ability to gather information is sharply circumscribed when he enters the Fourth Amendment's protected areas. Because in this case the officers and their dog clearly occupied the constitutionally protected extension of Jardines's home, the only question was whether he had given permission for them to do so. The Court found he had not. Id. While our nation's customs establish an implied license to approach someone's home, knock on the door, wait to be received, and then (if not invited to stay) leave, that is not what the police did in this case. Id. at 1415-16. Instead, they approached for the specific purpose of conducting a search. Id. at 1416. "There is no customary invitation to do that." Id. The state argued that Jardines lacked a reasonable expectation of privacy in the odors emanating from his home, but the Court stated that it:

> need not decide whether the officers' investigation of Jardines' home violated his expectation of privacy under Katz. One virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy. That the officers learned what they learned only by physically intruding on Jardines' property to gather evidence is enough to establish that a search occurred.

Id. at 1417.

Under the trespass theory of Jones and Jardines, then, a Fourth Amendment violation occurs if the police enter a constitutionally protected area, over which the defendant enjoys property rights, for the purpose of conducting a search. If this showing is made, the defendant need not additionally demonstrate a reasonable expectation of privacy in the area.

In the present case, the magistrate judge stated that the basement's location within the building favored placing it among constitutionally protected areas, akin to the curtilage. (Recommendation at 25.) She further stated that defendant's status as a tenant, which grants him right of use and access to the basement, may be sufficient to assert a protected property interest. (Recommendation at 26.) I conclude that further evidence would be helpful in deciding these issues.[3] I will therefore schedule a supplemental hearing, at which the parties should provide evidence including: a more detailed description of the layout of the basement; the ability of tenants and members of the public to access the basement, through the front and back doors to the building (and if only the back, whether that door was usually locked); the uses to which the basement was put, e.g., the storage of personal items by tenants; and defendant's property rights in the building, e.g., the terms any lease related to use of the basement or other common areas.[4]

**B.    Exigent Circumstances**

In the alternative, the government argues that exigent circumstances supported the

---

[3]As the government states, the parties did not before the magistrate judge specifically raise the trespass issue regarding the basement search.

[4]I note that, even prior to Jones, some courts drew a distinction between common areas any visitor would use, such as a hallway, and common areas generally accessible to and used only by tenants of the building, such as a shared basement or backyard. Villegas, 495 F.3d at 768 n.3 (discussing cases).

8

search of the basement. If so, defendant's legitimate expectation of privacy or property rights would not preclude the search.

Police may conduct a warrantless entry "when there is compelling need for official action and no time to secure a warrant." Michigan v. Tyler, 436 U.S. 499, 509 (1978). Courts have identified three general categories of qualifying emergencies: hot pursuit of a fleeing felon, see, e.g., Warden v. Hayden, 387 U.S. 294, 298-99 (1967); the imminent destruction of evidence, see, e.g., United States v. Rivera, 825 F.2d 152, 156 (7th Cir. 1987) (citing Ker v. California, 374 U.S. 23, 39-40 (1963)); and the need to protect public safety, see, e.g., Schmidt, 700 F.3d at 937 (noting that exigent circumstances exist when officers must render emergency assistance to an injured person or need to protect a person from imminent injury); United States v. Hardy, 52 F.3d 147, 149 (7th Cir. 1995) ("[O]ne well-recognized situation is when police reasonably believe that their safety or the safety of others may be threatened."). The government bears the burden of proving exigent circumstances existed at the time of the warrantless entry, United States v. Robles, 37 F.3d 1260, 1263 (7th Cir. 1994), and it is a "heavy" one, Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984).

In its objections, the government relies on Hayden. There, the police pursued a robber to a home, entering it without a warrant, arresting the suspect, and seizing a pistol and other evidence of the crime. 387 U.S. at 297-98. The Supreme Court upheld the entry, stating:

> The police were informed that an armed robbery had taken place, and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police

9

had control of all weapons which could be used against them or to effect an escape.

Id. at 298-99.

Hayden is distinguishable from the present case. While the record does not reveal precisely when the robbery occurred,[5] it appears that the police arrived at defendant's apartment more than two hours after defendant did. (Compare Tr. at 18, testimony that defendant gave his girlfriend money around 10:00 a.m., with Tr. at 8, testimony that the officers arrived at the apartment building at 12:10 p.m.) None of the officers indicated that they were in pursuit of defendant; rather, they testified that they went to the building to locate and talk to him.[6] (Tr. at 21, 23-24, 31, 38-39.) Further, nothing in the manner in which they approached the situation, knocking on the door and waiting a "good minute to two minutes before it opened" (Tr. at 10), suggested any exigency. Once inside, they did not immediately conduct a search for defendant or the firearm used in the robbery; rather, they sought and obtained the girlfriend's consent, taking the time to fill out a written form. Finally, the officer did not head down into the basement until after defendant had been located and arrested. (Tr. at 33.) He forthrightly testified that he did so in order to "search the area," (Tr. at 33), not to conduct a

---

[5]In his motion, defendant indicates that the police spoke to the victim at about 8:30 a.m. that day. (Motion to Suppress [R. 8] at 2.)

[6]This also distinguishes United States v. Holland, 511 F.2d 38 (6th 1975), cited by the government to the magistrate judge. In Holland, literally a hot pursuit case, police followed a trail of footprints in the snow from a recently robbed bank to the place from which an automobile had recently been driven, obtained the name of the driver, questioned that driver, who named the passenger he had driven from where the footprints stopped, went to the home of the passenger, whom they knew to be a convicted felon, and upon talking with an occupant of the home heard noise indicating that someone was upstairs, and decided to enter, all in the span of about thirty minutes.

10

protective sweep or otherwise ensure the officers' safety.[7]

Before the magistrate judge, the government argued that the officer reasonably entered the basement to look for the gun, which had not been located in defendant's apartment or car. The government cited Cady v. Dombrowski, 413 U.S. 433, 436-37 (1973), in which the police believed that the suspect's firearm may be in the trunk of his car, which had been towed to an unsecured private lot. Due to the "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle," the Court upheld the search. Id. at 447. In the present case, the government presented no evidence that the police had any specific reason to believe the gun would be found in the basement or that their inability to find the gun posed an imminent threat to the safety of anyone.[8]

In sum, the facts of this case fail to establish any emergency situation requiring the officers to immediately enter and search the basement area. For the reasons stated above and those stated by the magistrate judge, the government has failed to meet its burden of demonstrating exigent circumstances.

---

[7] The officer testified that as he proceeded to the basement he encountered a man sitting on the stairs. The man had been in defendant's apartment when the police arrived, but he told the officer he went to the basement to hide because he was on probation and didn't want to get in trouble for having contact with defendant, a convicted felon. (Tr. at 30, 36.) The officer apparently left the man sitting there, unrestrained, while he searched the basement, contrary to what one would expect if the police actually feared for their safety.

[8] Before the magistrate judge, the government also cited United States v. Holloway, 290 F.3d 1331, 1338 (11th Cir. 2002), in which the police responded to 911 calls reporting gunshots and arguing at the defendant's address. Arriving within minutes, the officers entered the home to check for victims of gunfire. In the present case, the government presented no evidence of similar need to provide emergency aid to anyone in the basement.

11

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that magistrate judge's recommendation (R. 16) is **ADOPTED** in part, as stated herein, and defendant's motion to suppress (R. 8) is **DENIED** in part. The court will schedule further proceedings on the remaining issue at today's status hearing.

Dated at Milwaukee, Wisconsin, this 4th day of June, 2014.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge