# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                       **Case No. 14-CR-20**

**EUGENE SWEENEY**
    **Defendant.**

## STATEMENT OF REASON MEMORANDUM

On December 23, 2013, defendant Eugene Sweeney robbed a tavern at gun point. On September 16, 2014, a jury convicted him of Hobbs Act robbery (count one), 18 U.S.C. § 1951(a); brandishing a firearm during a crime of violence (count two), 18 U.S.C. § 924(c); and felon in possession of firearm (count three), 18 U.S.C. § 922(g). On December 19, 2014, I imposed a sentence of 180 months on counts one and three, after determining that defendant qualified for an enhanced term under the Armed Criminal Act ("ACCA"), those terms running concurrently with each other and with a state sentence after revocation he was then serving, followed by 84 months consecutive on count two, for a total of 264 months.

The Seventh Circuit affirmed defendant's convictions but remanded the sentence based on errors in the imposition of supervised release conditions under United States v. Thompson, 777 F.3d 368 (7th Cir. 2015) and its progeny. United States v. Sweeney, 821 F.3d 893, 903-04 (7th Cir. 2016). The court declined to address defendant's challenge to the ACCA designation, made for the first time on appeal, indicating that this issue could be addressed on remand. Id. at 904-05.

On remand, following extensive briefing and given further developments of the law, the

government conceded that defendant did not qualify as an armed career criminal. I accepted the concession, ordered a revised pre-sentence report ("PSR"), and set the case for re-sentencing.

In imposing sentence, the district court must calculate the advisory sentencing guideline range, then consider the arguments of the parties and the factors set forth in 18 U.S.C. § 3553(a), making an individualized assessment based on the facts presented. After settling on the appropriate sentence, the court must adequately explain the chosen sentence to promote the perception of fair sentencing. United States v. Pankow, 884 F.3d 785, 793 (7th Cir. 2018). This memorandum sets forth written reasons for the sentence imposed.

## I. GUIDELINE CALCULATION

Defendant's revised PSR grouped counts one and three, see U.S.S.G. § 3D1.2 cmt. n.5, setting the total offense level at 22.[1] Because he denied guilt and went to trial, the report declined a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Finally, the PSR calculated a criminal history category of VI, producing an imprisonment range of 84-105 months on counts one and three, with count two requiring an 84 month consecutive term. U.S.S.G. § 2K2.4. I adopted these calculations.

---

[1] On count one, the PSR set a base level of 20, U.S.S.G. § 2B3.1(a), then added 2 levels because the robbery victim was "physically restrained," § 2B3.1(b)(4)(B). On count three, the PSR set a base level of 20 given defendant's previous conviction for robbery, a "crime of violence," U.S.S.G. § 2K2.1(a)(4)(A), then added 2 levels because the firearm had been reported stolen, § 2K2.1(b)(4)(A). Defendant challenged the use of his Wisconsin robbery conviction to increase the base level on count three, but he conceded that the final level would not change given the calculations on grouped count one. I declined to resolve the objection under Fed. R. Crim. P. 32(i)(3)(B) and United States v. Hawkins, 777 F.3d 880, 885 (7th Cir. 2015), as it did not affect the guidelines or the sentence.

## II. SECTION 3553(a)

**A.    Sentencing Factors**

Section 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory sentencing guideline range;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: just punishment, deterrence, protection of the public, and provision of needed correctional treatment. Id. While the court must as part of its analysis consider the sentence recommended by the guidelines, the court retains discretion "to select an appropriate sentence for the individual defendant and

3

the surrounding circumstances." United States v. Musgraves, 883 F.3d 709, 715 (7th Cir. 2018).

**B.      Analysis**

   **1.      The Offense**

On December 23, 2013, defendant entered the back door of a bar, encountering the general manager as she climbed the stairs from her basement office. Pulling a gun from his coat, he directed the manager back into her office. Once in the office, the manager took a bank bag, which contained $820, tossed it to defendant, and told him to leave. After defendant left the premises, the manager called the police.

The manager was able to identify defendant, a former employee, as the robber. The police went to his apartment, discovering robbery proceeds in the apartment and on his person. They also found a firearm in the basement. Subsequent investigation revealed that the firearm had been stolen during a home burglary several months earlier.

   **2.      The Defendant**

Defendant was at the time of his re-sentencing 41 years old. Although he no longer technically qualified as a career offender under the ACCA or the sentencing guidelines, he did have an extensive prior record, including a juvenile armed robbery adjudication in 1994, then adult convictions for robbery and intimidation of a witness in 1996,[2] burglary in 2005,[3] disorderly conduct in 2010, and possession of THC in 2012. He was on extended supervision on the 2005 robbery case when he committed the instant offense, leading to revocation and a 3-½

---

[2] He received concurrent five year prison sentences for these offenses.

[3] He initially served five years' confinement on this offense.

4

year sentence he served until January 13, 2017.

Defendant reported a difficult childhood and seemed to be estranged from much of his family. He did have support from a friend, Devvin Thomas, who wrote a positive letter. Defendant admitted regular use of marijuana and problematic drinking in the past, but those did not appear to be significant issues currently. The PSR did suggest a need for mental health treatment, which I included as part of the sentence. His work history was spotty, primarily because he had been in and out of prison much of his life. He had attempted to further his education, as discussed in of the PSR, and he did complete a significant amount of prison programming following the original sentence.

### 3. The Sentence

As indicated, the guidelines recommended 84-105 months on counts one and three, plus 84 months consecutive on count two. Everyone acknowledged that a substantial prison sentence was needed to reflect the seriousness of the offense, which endangered the safety of the victim, caused her lasting trauma, and represented a betrayal, as she had previously employed defendant; to deter others from engaging in this kind of dangerous conduct; to protect the public, given defendant's extensive record, including for similar offenses; and to deter defendant, as the lesser prison sentences he had served and being on supervision did not suffice.

Defendant argued that I should impose a total sentence of 10 years, adjusted to make it concurrent as of the date of the original sentencing. The government argued that I should impose the same sentence I did originally, noting the Seventh Circuit's statement that even if, under the so-called categorical approach, some or all of defendant's ACCA predicates no longer qualified, the court may still consider the underlying facts in exercising judgment under

5

§ 3553(a) within the un-enhanced statutory ranges. Sweeney, 821 F.3d at 905. The government indicated that the formal classification of defendant's prior offenses mattered less than the true nature of those crimes and what they said about defendant's level of dangerousness.

The government's recommendation was well above what the guidelines now called for. Nevertheless, I was authorized to impose such a sentence, and I carefully considered the nature of defendant's prior felonies. After undertaking that analysis, however, I found the government's recommendation greater than necessary.

In 1994, when he was 16 years old, defendant and another boy committed an armed robbery of a convenience store, taking merchandise worth $35.86. Then, in 1996, when he was 18, defendant committed another robbery, in which he grabbed the victim, a store clerk, held a knife to her throat, and took the nightly deposit.[4] He was also convicted of witness intimidation at that time based on threatening letters he sent to another person involved in the robbery case. Serious as those offenses were, defendant committed them more than 20 years ago, when he was a teenager. Their value in predicting his current level of dangerousness was thus diminished. Defendant also had a burglary conviction from 2005, but that case was far less serious: he broke into a bar and took a jar containing money.

Defendant described all of his priors as being impulsive, committed for relatively little gain, and that seemed an accurate description. With age and maturity, coupled with counseling, those problems would hopefully abate.

---

[4] When defendant confronted the clerk, wearing a mask, she initially thought it was her new boyfriend playing a practical joke. The PSR does indicate that the man accompanying the store clerk while she made the nightly deposit was an accomplice in the robbery. (PSR ¶ 48.)

6

On the issue of age, I noted that under the sentence recommended by the defense, defendant would be in his upper 40s, approaching 50, when released, an age when, statistically at least, recidivism tends to decline. See United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders (Dec. 7, 2017).

Further, as reflected in the prison programming materials filed by the defense, there was at least some reason to believe that defendant was trying to address his issues and was committed to doing better in the future. He had completed a transition unit program, creative writing classes, a job readiness class, a small business class, a communications class, "Stop the Violence" training, a reentry class, basic cognitive skills, and anger management. None of this was a guarantee that he would succeed on release, but it did provide at least some source of optimism. See Pepper v. United States, 562 U.S. 476, 490 (2011) ("[W]e think it clear that when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range."). And while there were still legitimate reasons to be concerned about his anger, there were also people who had noticed a different side, as discussed in Mr. Thomas's letter.

It was also true, as the government noted, that shorter periods of imprisonment and being on supervision did not suffice to deter defendant, and a greater sentence was needed now to satisfy that purpose. But the government's recommendation was more than four times longer than his previous sentences, all of which were five years or less. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct,

to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend."). In looking at the entire picture, I could not conclude that a sentence along the lines recommended by the government was necessary to protect the public and for specific deterrence. See also Dean v. United States, 137 S. Ct. 1170 (2017) (holding that sentencing courts may consider the mandatory minimum term required by § 924(c) when choosing the appropriate sentence for the predicate offenses).

Under all the circumstances, I found a sentence along the lines recommended by the defense sufficient but not greater than necessary. An effective term exceeding 10 years sufficiently punished defendant for a robbery that, while very serious and traumatic, did not result in physical injury and caused a relatively small loss. It also sufficed to deter, as it was twice as long as his previous sentences, and protected the public, given the nature of his prior record and his age.

As indicated, when the case was here originally, I imposed the sentences on counts one and three to run concurrently with the state revocation term. It was no longer possible to run the sentences on those counts concurrently with the state term, which had discharged. However, the lost opportunity for concurrent time is a factor a court can consider under § 3553(a). See United States v. Villegas-Miranda, 579 F.3d 798, 802-03 (7th Cir. 2009). The guidelines recommend consecutive time in the revocation context, U.S.S.G. § 5G1.3 cmt. n.4(C), but concurrent time can be reasonable where, as was the case here, the revocation is based on the instant offense conduct. See United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001).

8

It appeared that the sentence I imposed on remand would, in the view of the Bureau of Prisons, commence on January 13, 2017, when defendant finished the state term. See 18 U.S.C. § 3585(b). In other words, there would be no "credit" for the time from December 19, 2014, the date I originally sentenced defendant, to January 13, 2017. Therefore, in order to make the sentences effectively concurrent, an adjustment was necessary. See U.S.S.G. § 5G1.3(b). The period between December 2014 and January 2017 equaled about 25 months. I noted that this did not make the terms "fully" concurrent; in other words, the adjustment did not travel all the way back to the date of arrest, just to the date of the original sentence, which was necessary to give defendant the benefit of the concurrent term I imposed originally. I therefore imposed a total sentence of 120 months, adjusted by 25 months to account for the time that would not be credited by the BOP, for a final sentence of 95 months.

### III. CONCLUSION

For the foregoing reasons, I committed defendant to the custody of the Bureau of Prisons for 11 months on counts one and three running concurrently with each other, and 84 months on count two running consecutively, for a total of 95 months. I ordered him to make restitution of $326.75, the amount not recovered. On release from prison, I required him to serve supervision terms of three years on each count concurrent, a term sufficient to ensure monitoring, treatment, and legitimate employment. The supervision conditions included financial monitoring, to ensure he paid restitution, and a mental health assessment and treatment program.

Dated at Milwaukee, Wisconsin, this 4th day of September, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge